**In re WPRV–TV, INC., f/k/a WSTE–TV, Inc., ID # 73–1203170, Debtor.**

**Bankruptcy No. 87–01393.**

United States Bankruptcy Court, E.D. Oklahoma.

June 15, 1988.

See also, Bkrtcy., 102 B.R. 226.

Donald F. Marlar, Pray, Walker, Jackman, Williamson & Marlar, Tulsa, Okl., for debtor.

Warren L. McConnico, Savage, O'Donnell, Scott, McNulty & Affeldt, Tulsa, Okl., for creditor.

### ORDER

JAMES E. RYAN, Bankruptcy Judge.

On March 17, 1988, RCA's (Creditor) Motion for Relief From the Automatic Stay or in the Alternative, Adequate Protection, with WPRV–TV's (Debtor) Response and

Objection, came on for hearing before this Court. Debtor appeared through counsel, Donald F. Marlar of the firm Pray, Walker, Jackman, Williamson & Marlar, and Creditor was represented by and through Warren L. McConnico of Savage, O'Donnell, Scott, McNulty & Affeldt.

At the conclusion of the introduction of evidence by the parties, this Court gave each side the opportunity to submit legal position papers at their discretion outlining any authority in support of their contentions in this matter. Both parties took advantage of this opportunity and the briefs provided were taken into consideration in the preparation of this decision.

At a hearing held in this case on June 7, 1988, the parties agreed that the valuation evidence and testimony taken in the March 17 hearing could also be utilized for the purpose of determining Creditor's secured status pursuant to 11 U.S.C. § 506. Therefore, this Order will also address and resolve this issue deriving the necessary evidence from the earlier hearing.

Upon review of the testimony, evidence and law in this case, the following Findings of Fact, Conclusions of Law and Order shall be entered herein:

## FINDINGS OF FACT

1. This is a "core" proceeding as envisioned by 28 U.S.C. § 157(b).

2. Debtor operates a television station servicing the Commonwealth of Puerto Rico. Specifically, the equipment with which this Order is most concerned is located at the El Yunte transmitter site and the Fajardo antenna translator site. Debtor obtained licensing in 1983 under the auspices of WSTE–TV but began operations under its present corporate name of WPRV–TV in 1984.

3. In 1984, Debtor entered into a number of Retail Installment Sale Contracts with the Creditor as follows:

(a) RCA Contract No. BCD–30307F dated May 4, 1984—transmitter and associated equipment

Modification to RCA Contract No. BCD–30307F dated October 5, 1985 and October 16, 1985—Antenna and transmitter and associated equipment

(b) RCA Contract No. BCD–44075A dated August 22, 1984—Studio technical equipment

(c) RCA Contract No. BCD–44076A dated August 22, 1984—Antenna and associated equipment.

These contracts are the source of the obligation between the parties on the equipment at issue in this determination, resulting in an indebtedness of $841,579.91 as of filing.

4. In May of 1987, a fire destroyed the broadcasting transmitter, thereby limiting the broadcasting power of the station from 50 kilowatts to 5 kilowatts. Prior to the fire, the station had experienced substantial operating losses.

5. The insurer of the transmitter has refused to replace the equipment, resulting in litigation with the Debtor regarding enforcement of the insurance agreement. However, Creditor's lien will attach to the proceeds of the litigation, if any, which may result from the resolution of the case.

In the meantime, the Debtor has contracted to purchase two smaller transmitters to resume full power broadcasting service at a cost of approximately $620,000.00.

6. The Debtor filed for Chapter 11 bankruptcy on December 3, 1987 to reorganize its operations.

7. At the hearing on the Motion for Relief from the Automatic Stay, expert testimony on both sides related three major categories for broadcasting equipment:

(a) Transmitter and associated equipment (Transmitter)

(b) Studio technical equipment (Studio)

(c) Antenna, transmission lines and associated equipment (Antenna).

8. The Creditor offered expert testimony concerning the value of the equipment to the effect:

(a) Transmitter—$281,639

(b) Studio—$337,981

(c) Antenna—$71,997

This calculation was derived by taking the replacement cost less one-third depreciation of the useful life of the equipment, and including procurement and installation costs as well as any quantity discounts.

9. The Debtor offered testimony to the effect:

(a) Transmitter—$600,000

(b) Studio—$125,000

(c) Antenna—$275,000

This is the replacement cost of modern equipment to a total of approximately $900,000 to $1,000,000.

10. Testimony from both witnesses revealed that there is no standing market for "used" technical equipment upon which to base an estimate. Also, mutual agreement was reached upon closer examination from each expert that there is negligible depreciation associated with the Antenna and the non-electronic components. Therefore, the only item of Creditor's collateral capable of measurable depreciation is the Studio. As a result of the fire at the transmitter and the testimony in Court, it is unclear whether the associated equipment to the destroyed transmitter met with a similar fate since all were included in Creditor's appraisal. Thus, none of this equipment will be valued or considered further in this Order.

## CONCLUSIONS OF LAW

A. The determination for relief from the automatic stay in this case is governed by 11 U.S.C. § 362(d)(2) which states that relief may be granted upon request:

"(2) With respect to a stay of an act against property if—

(A) The debtor does not have an equity in such property; and

(B) Such property is not necessary to an effective reorganization."

Obviously, the Debtor does not have an equity in the property involved in this case. However, the equipment is absolutely essential for the reorganization of the Debtor as the equipment is part and parcel to the entire business operation. At this time, reorganization is given a reasonable likelihood of success, thereby making the retention of the equipment meaningful.

B. As has been admitted in the briefs of both parties, Congress, in formulating the Bankruptcy Code, allowed the Courts considerable discretion in the value determination for adequate protection purposes pursuant to 11 U.S.C. § 361. Congress explicitly stated that "value" was to be considered a flexible concept "to permit the Courts to adapt to varying circumstances and changing modes of financing" and that such matters "are to be left to case-by-case interpretation and development." H.R. Rep. No. 595, 95th Cong., 2d Sess. 339 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 6295.

Along with this flexibility as to "value" is a corresponding flexibility as to the amount of adequate protection payments. "Because Congress intended that 'value' was to be determined on a case-by-case basis, that which is designed to protect value, i.e., adequate protection, must also be determined on a case-by-case basis, permitting the debtors maximum flexibility in structuring a proposal for adequate protection." *In re Martin*, 761 F.2d 472, 474 (8th Cir.1985).

C. Under 11 U.S.C. § 361, adequate protection is granted to compensate the Creditor for any decrease in value which may result from the retention of property by the Debtor. The only equipment in this case subject to dimunition of value based on testimony is the Studio. The remaining equipment depreciates negligibly in the time frame that is considered in this case so will not be subject to adequate protection payments.

Also, the collateral subject to the Creditor's security interest is already installed and in the possession of the Debtor. Therefore, any costs attributable to installation and procurement as well as any quantity discount will not be considered by this Court for valuation purposes.

D. For § 361 adequate protection purposes, valuation is viewed from the Creditor's perspective—i.e., is he adequately protected and what would he receive for the equipment if allowed to repossess it. Nor-

mally, value would be predicated upon a "used" market value but since in this present case no evidence of a "used" value was introduced by either party, the only consistent valuation method available to this Court is replacement cost. Regardless of the labels placed on the values supplied by the parties, all of these values find their basis in replacement cost when the irrelevant or inapplicable data is removed.

Some evidence of the substantial cost · associated with the removal of the equipment was introduced into the record by the Debtor but since these costs were never reduced into a calculable form, they will not be considered.

In consideration of adequate protection, the Studio is the lone component with diminishing value computed, as brought out in testimony, by the replacement cost less one-third of the usable life of fifteen years. Through Creditor's expert, and since Debtor contributed little tangible evidence to dispute the calculation, this Court finds a total replacement value on the Studio of approximately $90,000.

Thus, the resulting adequate protection payment is calculated as:

|  |  |  |
|---|---|---|
|  | $90,000 | approximate replacement cost of Studio |
|  | —$30,000 | depreciation of one-third usable life |
|  | $60,000 |  |
| divided by | 10 | years remaining usable life |
|  | $ 6,000 | adequate protection payment per year |
| divided by | 12 | months |
|  | $ 500 | adequate protection payment per month |

E. For secured status determination purposes pursuant to § 506, valuation is viewed from the Debtor's perspective—i.e., what value will be placed on the Debtor's enjoyment stemming from the continued use of the collateral in the reorganization. The Creditor established through exhibit

that at least $508,504 would be required to replace the Antenna and Studio in their entirety in a "new" condition, which Debtor does not dispute. Since the Debtor would receive a new equipment benefit and a corresponding extension in useful life, as well as any technological advances in the new equipment, the only consistent and defensible valuation method is that of replacement cost in the Debtor's operation. The Debtor is benefiting from the use of the existing equipment in its operation no less than if new equipment were installed. Thus, replacement cost is the appropriate measure of value.

To this end, this Court attaches a total value of $508,504 to Creditor's secured claim on the Studio and Antenna, utilizing the replacement costs stated in Creditor's Exhibit No. 7.

IT IS THEREFORE ORDERED that Creditor's Motion for Relief from the Stay is denied. However, Debtor is ordered to pay $500 per month in adequate protection payments beginning February, 1988. Further, the secured claim of the Creditor is adjudged to have a total value of $508,504.